UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PEGGY A. MOORE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, )<br>)<br>Defendant. )<br>) | No. 1:13-cv-00381-TWP-MJD |

**REPORT AND RECOMMENDATION**

Plaintiff Peggy Moore ("Moore") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA").[1]  *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3).  For the reasons set forth below, the Magistrate Judge recommends that the commissioner's decision be **AFFIRMED**.

**I.  Procedural History**

Moore filed an application for DIB and SSI on March 10, 2006, alleging an onset of disability as of March 1, 2003.[2]  [R. at 83.]  Moore's applications were denied initially on March 10, 2006 and denied on reconsideration on October 26, 2006.  [*Id.*]  Moore timely requested a

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[2] Although Moore alleged disability beginning on March 1, 2003 in her applications, she subsequently amended the alleged onset date to August 15, 2004. [R. at 441.] While the ALJ found that Moore engaged in substantial gainful activity through November of 2004, Moore believes this to be an "unsuccessful work attempt," which would not be considered substantial gainful activity. [Dkt. 18 at 3.] Nevertheless, Moore does not argue this point, believing that it is "not material to these proceedings." [*Id.*]

1

hearing, which was held before Administrative Law Judge Ronald T. Jordan ("ALJ") on January 5, 2009. The ALJ's May 26, 2009 decision also denied Moore's applications for DIB and SSI, but on July 26, 2011 the Appeals Council granted Scott's request for review and remanded the case for further proceedings. On remand, the ALJ presided over a second hearing on January 19, 2012, and on February 22, 2012 the ALJ again denied Moore's applications. The Appeals Council denied Moore's second request for review on February 15, 2013 making the ALJ's second decision the final decision for purposes of judicial review. Moore timely filed her Complaint with this Court on March 7, 2013.

## II.  Factual Background and Medical History

Moore, now forty-six years old, applied for DIB and SSI in 2006 based on her "[f]ibromyalgia, anxiety disorder, [and] degenerative joints-knees."[3] [R. at 109.] In her application, Moore reported that she cannot lift anything that weighs more than five or ten pounds without causing significant pain, that her heart races when she attempts to do anything strenuous, that she cannot sit or stand in one place for very long because of her knees, that she takes medication for her anxiety, and that she has a lot of problems with fatigue. [R. at 109-110.] Moore also reported that she was prescribed Elavil for her fibromyalgia and Paxil for her anxiety disorder, and she took Advil as needed for her pain. [R. at 114.]

Also in 2006, two of Moore's family members made third party reports to the Disability Determination Bureau (DDB) regarding her conditions. Moore's brother, William Moore, reported that her stress-induced panic attacks happen all of the time and last about fifteen minutes each, and after they occur she immediately lies down in the bedroom. [R. at 165.] Moore's mother, Betty Moore, reported that her daughter is able to take care of herself, pets, and

---

[3] Because Moore only contests the ALJ's decision with regard to her fibromyalgia, the Court will limit its discussion regarding Moore's anxiety disorder and her degenerative joints. [*See* dkt. 18 at 2-4.]

other people, prepare meals for herself and others daily, do the cleaning and laundry, go grocery shopping, drive a car, and manage her finances.  [R. at 182-88.]  However, Betty Moore also reported that her daughter has difficulty lifting, standing, walking, sitting, stair climbing, kneeling, and reaching, needing to rest for twenty minutes when she over-exerts herself.  [R. at 189.]

In the time between Moore's alleged onset date and her 2006 application for DIB and SSI, Moore was seen regularly by Dr. Kavelman and Dr. Marshall at Columbus Regional Hospital.  [*See* R. at 277-303.]  In 2003, early in her treatment for fibromyalgia, Dr. Kavelman noted that the cause of her pain was probably "just mechanical" [r. at 297] and it was "appropriate" for Moore to return to work less than one week later, in spite of her diagnosis of fibromyalgia [r. at 323].  In September of 2006, Dr. Kavelman reported that Moore could only sit, stand, or walk for an hour at a time and could only sit for two to three hours total within an eight hour workday.  [R. at 239.]  Also in September of 2006, Dr. Marshall reported that Moore was able to sit, stand, or walk for two hours at a time and could sit for six hours total within an eight hour workday.  [R. at 252.]

Moore's initial state agency consultation from May of 2006 found that Moore's physical limitations were "not severe."  [R. at 258.]  In July of 2006, a state agency examiner reported that Moore's mental impairments were not severe, noting that "the claimant's primary problems were physical in nature."  [R. at 259, 71.]  In October of 2006, Moore's initial findings of lack of mental and physical disability were affirmed in two further state agency consultative examinations, which took into account additional evidence.  [R. at 242-43.]  Upon remand in October of 2008, an additional state agency consultant examined Moore's exertional limitations and reported that Moore could stand and walk, with normal breaks, for at least two hours total

within an eight hour workday, and Moore could sit for up to six hours total within an eight hour workday. [R. at 228.]

By 2009, Moore was no longer under care at Columbus Regional Hospital, and she began regular treatment at Volunteers in Medicine in Bartholomew County. [*See* r. at 391-433.] In a March 2011 gynecological examination at Volunteers in Medicine, Moore denied having any "significant health issues," only reporting "[s]ome psychiatric difficulties" to the examining physician. [R. at 408.] However, in a February 2012 evaluation of Moore's physical capacity, Dr. Rau, Moore's current treating physician, reported that Moore was not able to sit, stand, or walk for more than thirty minutes at a time and that Moore was not able to sit, stand, or walk for more than thirty minutes total within an eight hour workday. [R. at 434.]

Despite Dr. Rau's drastic report, Moore was able to sit throughout her hearing without any pain behaviors or expressions and appeared to stand easily and without pain. [R. at 24.] At her hearing, Moore testified that she cannot sit for more than three hours straight, that she can only stand for up to fifteen minutes at a time, and that if she does anything physical, such as vacuuming, her fibromyalgia becomes aggravated and she has to lie down. [R. at 449.] Also at the hearing, Dr. Holan, a specialist in internal medicine, testified that persons with fibromyalgia have to be able to move around a lot at work, such as having a sit-stand option, because it is difficult for the person to maintain a particular position for an extended period of time. [R. at 463.] Perhaps most importantly, Dr. Holan testified "[t]he difficulty is [sic] with fibromyalgia is very individualized and she would have to try [the sit-stand option] to see how she could do." [R. at 464.] A vocational expert was also present at the hearing, testifying that a person working as an office clerk, a cashier, or an assembler would have a sit-stand option that would allow a person to change positions and move about up to one hour each day without demanding physical

4

exertion, but the person would have to be able to be on task about ninety-five percent of the time and would not have an opportunity to lie down for fifteen minutes. [R. at 465-67.]

### III.  Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability according to 42 U.S.C. § 423. Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the Commissioner determines that the claimant's impairment meets any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant *is* disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; (5) if the claimant can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). This court may not reweigh the evidence or substitute its judgment for that of the ALJ, but only determine whether or not substantial

evidence supports the ALJ's conclusion.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV.  The ALJ's Decision

The ALJ first determined that Moore meets the insured status requirements of the Act through December 31, 2009 and has not engaged in substantial gainful activity (SGA) since December of 2004.  [R. at 15.]  At step two, the ALJ found that Moore's fibromyalgia, right carpal tunnel syndrome, depression, and anxiety are severe impairments that significantly limit her ability to perform basic work activities.  [R. at 16-18.]  However, at step three the ALJ found that Moore does not have an impairment or combination of impairments that meet(s) or medically equal(s) one of the listed impairments.  [R. at 18-21.]

After step three but before step four, the ALJ determined that Moore has the residual functional capacity (RFC) to perform work within the range of sedentary work provided for by the Act.  [R. at 21.]  Specifically, the ALJ found:

> She can lift, carry, push, or pull 10 pounds occasionally and 5 pounds frequently. The claimant should be permitted to perform her job in a seated position for up to 8 hours.  However, the claimant should have the opportunity to stand at her work station for up to 5 minutes each hour at her discretion.  She can stand for 1 hour each day at brief intervals spread throughout the day.  She occasionally can stoop, balance, crouch, crawl, kneel, and climb stairs or ramps.  However, she should not climb ladders, ropes, or scaffolds; and she should not work around hazards such as unprotected heights or unguarded, dangerous moving machinery.  Her work should be limited to simple, repetitive tasks requiring little or no independent judgment regarding work processes.  Furthermore, work goals from day to day should be static and predictable to the employee.

[*Id.*]  At step four, because work as a machine operator, a housekeeper/cleaner, and a sorter/packer exceeds Moore's RFC, the ALJ found that Moore is unable to perform her past relevant work.  [R. at 28-29.]  However, at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Moore can perform, such as cashier, office clerk, and assembler.  [R. at 29-30.]  Because of these findings, the ALJ concluded that Moore is not disabled, as defined by the SSA.  [R. at 30.]

## V. Discussion

Moore raises two arguments as to why this Court should reverse the decision of the ALJ, both relating to the ALJ's consideration of Dr. Holan's expert testimony at her hearing.  First, Moore argues that the ALJ did not evaluate Dr. Holan's option that "Moore cannot sit six to eight hours in a work day."  [Dkt. 18 at 11.]  Second, Moore argues that the ALJ "misstated and misanalysed Dr. Holan's opinion about a sit-stand option."  [*Id.* at 13.]  Both of these arguments ask the Court to scrutinize the ALJ's evaluation of Dr. Holan's opinion in Moore's RFC assessment, and the Court will address these issues as one.[4]

It is the duty of the ALJ to consider the entirety of the record when making his disability determination; "the ALJ may not simply ignore evidence."  *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009).  However, the ALJ need not reduce all of the evidence he considers to writing in his decision.  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).  When evaluating opinion evidence of nonexamining medical sources, the ALJ must "consider" all of the evidence, but the ALJ explicitly "is not bound" by any findings made by State agency medical consultants,

---

[4] It is unclear as to whether a second argument exists, as Moore "abandons most of the points made in the second subsection of her Argument section" in her Reply brief. [Dkt. 20 at 5.]  Because this constitutes a waiver of those abandoned points, and because "[i]t is well settled law in [the Seventh] Circuit that arguments raised for the first time in a reply brief are waived," the Court will only consider the points that Moore raises in both her Brief in Support of Plaintiff's Complaint ("Brief") and in her Reply Brief.  *Wolotka v. Sch. Town of Munster*, 399 F. Supp. 2d 885, 901 (N.D. Ind. 2005).

7

program physicians, or other medical specialists who are experts in Social Security disability evaluation.  20 C.F.R. § 404.1527(e).  Only when there is "reason to believe that an ALJ ignored important evidence" does error exist.  *Walters v. Astrue*, 444 Fed.Appx. 913, 917 (7th Cir. 2011).

Moore asserts that the ALJ's finding of lack of disability rests on a flawed RFC assessment, which resulted in a flawed hypothetical question to the vocational expert.  [Dkt. 18 at 4.]  To support this assertion, Moore first highlights the portion of Dr. Holan's testimony indicating that an individual with documented fibromyalgia "would not be able to sit for six to eight hours a day."  [R. at 463.]  However, when the ALJ asked Dr. Holan to clarify this statement, Dr. Holan testified that the difficulty would be in "maintaining the individual position rather than going through the entire work day."  [*Id.*]  Dr. Holan then clarified for Moore's attorney that any job where "the change in position was not allowed it [sic] would be difficult."  [*Id.*]

Moore's second argument claims that the ALJ did not properly take Moore's sit-stand option needs into account in his RFC assessment.  Citing to the ALJ's decision, Moore states in her Brief that "Dr. Holan opined that [Moore] needed the option of changing positions between sitting and standing every thirty minutes."  [Dkt. 18 at 13 (quoting r. at 27).]  This is an accurate quotation of the ALJ's decision, but Dr. Holan made no such finding.  This claimed diagnosis was hypothesized by Moore's attorney and presented to Dr. Holan as a possible restriction, to which Dr. Holan responded: "[a]lternating between sitting and standing, every half hour or so would be something that she might be able to do, it would just be something that would have to be tried."  [R. at 464.]

In an attempt to rectify this misguided argument, Moore claims in her Reply Brief that it was the ALJ who "accepted Moore's need to change positions between sitting and standing

8

every 30 minutes" and argues that this alleged acceptance, which directly conflicts with the ALJ's RFC assessment, causes the ALJ's RFC assessment to be flawed. [Dkt. 20 at 6-7.] The Court finds this argument to be inane. While the ALJ mistakenly attributed the quoted statement to Dr. Holan, there is no logic in concluding that the ALJ must therefore agree with the hypothetical presented by Moore's attorney; a mistaken attribution does not transfer the attributed opinion to the writer. The fact that the ALJ attributed the alleged diagnosis to Dr. Holan in the first place and then did not include the phantom diagnosis in the RFC assessment is a strong indication that the ALJ does not accept the fabricated requirement as true. Further, the RFC assessment is, by definition, the ALJ's final conclusion regarding Moore's capabilities. Moore does not dispute that "the ALJ's hypothetical question to the vocational expert matched his RFC assessment." [Dkt. 18 at 15.] Thus, the only issue remaining is whether the ALJ's RFC assessment properly considers Dr. Holan's opinion that a person with documented fibromyalgia would not be able to perform work that does not allow a change in position through the workday.

To attack the ALJ's RFC assessment, Moore argues that "a medical opinion from a board-certified internal medicine specialist, rendered at a Social Security hearing at the request of the ALJ, is not just another piece of evidence" and should be given greater weight than other evidence that is not required to be discussed by the ALJ in detail. [Dkt. 18 at 12.] This argument is in direct contradiction to 20 C.F.R. § 404.1527(c), which clearly states that "a treating source's opinion [is given] controlling weight," and any other medical opinion is weighted based factors such as the examining relationship between the claimant and the medical professional; the length, frequency, nature, and extent of the treatment relationship between the claimant and the medical professional; the supportability of the opinion of the medical professional; the opinion's consistency with the record; and whether the medical professional is a

9

specialist.  An ALJ is never bound by the opinion of a nonexamining program physician.  20 C.F.R. § 404.1527(e).

In his evaluation of Dr. Holan's opinion during the RFC assessment, the ALJ properly considered the opinion and assigned the opinion a particular weight.  Although the entire transcript was not discussed, the ALJ mentioned several points that Dr. Holan raised.  [R. at 27.]  The ALJ decided to give medium weight to Dr. Holan's opinion "as it is consistent with the claimant's allegations of pain and fatigue" and accordingly "provided for the change in position by a provision in the residual functional capacity assessment of allowing the claimant to sit most of the time and to change position regularly at her discretion."  [*Id.*]  In light of the fact that Dr. Holan was neither a treating physician nor an examining physician, it was appropriate for the ALJ to give medium weight to Dr. Holan's opinion.

The fact that the ALJ initially incorrectly stated Dr. Holan's opinion regarding Moore's required sit-stand option is harmless error.  The ALJ's RFC assessment provides for changes in position at Moore's discretion, which is consistent Dr. Holan's actual testimony that the maintenance of the same position throughout the length of a workday would be difficult for a person with diagnosed fibromyalgia.  [R. at 463.]  Accordingly, the ALJ did not err in evaluating the opinions of Dr. Holan, and the Court should **affirm** the ALJ's finding that Moore is not disabled according to the SSA.

## VI.  Conclusion

For the aforementioned reasons, the Court should find that substantial evidence supports the ALJ's determination that Moore is not disabled.  The Commissioner's decision should therefore be **affirmed**.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b),

and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 12/20/2013

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Timothy J. Vrana
tim@timvrana.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov